94

Franey Will.

Argued January 22, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*William R. Mosolino,* for appellant.

*Joseph A. Zane,* with him *Frank J. Toole, John E. Lavelle,* and *Burke & Burke,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1969:

Mary Cuff Franey (hereinafter referred to as the testatrix), at the age of 75, suffered a heart attack on the afternoon of June 3, 1966, and died approximately three hours later. Testatrix was a widow who left no surviving children. A columnar ruled sheet of paper which was in the testatrix's handwriting on both sides of the sheet was offered to the Register of Wills for probate. The Register probated only that side of the paper which bore the signature of testatrix and the date *"June 3,* 1966," and the words "last will & testament."

Mary Cuff Kane, a niece of testatrix, filed an appeal from the probate in which she contended (a) that both sides of the aforesaid sheet of paper should have been probated or, in the alternative, (b) that a holographic, seven-page will\* dated *March 10,* 1966, which

---

\* The paper was termed a "will."

appears to have been signed at the end thereof by Mary Cuff Franey and witnessed, represented testatrix's last will. Her appeal was dismissed by the Orphans' Court, and from its final decree she took this appeal.

The probated sheet of paper* appears as follows:

The reverse side (which was not probated) of the sheet of paper appears as follows:

---

*As well as the other side of the sheet of paper.

+ change name to R ry Cliff Tracey.

~~Fite Income Tax~~ ½ ~~James J Tracey~~ ¼ ~~Mary~~ Tracey

Cath. Daughters — Mary Cliff Kane — 9 Churches

Bonds ∨ Mary Cliff Kane

P.P.+L Stock ∨

Bank account ∨ Mary Kane ∨

Xmas club ∨ Mary Kane

Jo. Nettasuji — sale of property x.

Dan Ferguson atty — + executor

executor + Co-executor Michael Sullivan

car — Sullivan ∨
Household furniting the linen silver china — towels jewelry
heirs Sullivan + Siedlaca — no change undertaking
~~Faughaus + Isabell + Jim Farrell~~ + supplies
Camille Tierney — Baughan boys

~~Father Jno Sullivan damage~~
clothes ~~coats stole~~
Yellow vase — Camille News
Jewelry. Diamonds Mary Boyle bag ring
~~Insurance Estate~~
~~Sullivan + Personal~~
Luggage
Bank box key in small brown flowered bag. (Sally 2 old
Tyson
all the

It is a matter of common knowledge that the most important and often the most difficult thing about a will is to determine the intention of the testator. Moreover, that is particularly so where the alleged will consists of a holographic writing which leaves in doubt not only its meaning but also the question of whether it was intended to be a will and complies with all the statutory requirements. Furthermore, in the instant case, the testimony concerning the probated sheet of paper was at times uncertain as well as conflicting, thus making the determination of (1) whether it was a will and (2) its interpretation and (3) its effect upon a prior will exceptionally difficult.

The record, including the testimony, shows that early in 1966 the testatrix wrote in her own handwriting, on *seven pages* of her stationery, a detailed disposition of her property, with particular emphasis on her personal effects, many of which were given to appellant. This writing, dated *March 10*, 1966, pertinently provided: "I, Mary Cuff Franey in good health and sound mind and of my own free will, in case of a sudden and unprovided death, *do give away and bequeath**  to the persons named in this written statement the following articles with no change to be made." There was no residuary clause. This lengthy seven-page writing bore the signature of the testatrix at the end, and also contained the signature of two witnesses.

The Orphans' Court decided that the aforesaid seven-page writing or will dated *March 10*, 1966, had been *impliedly* revoked by the above-mentioned probated sheet (will) dated *June 3*, 1966. This sheet contained no provision concerning revocation; the relevancy and the importance of this will be discussed hereinafter.

---

\* Italics, ours.

In its consideration of and its Opinion dealing with the aforesaid probated sheet of paper dated June 3, 1966, the Orphans' Court Judge did not make any findings with respect to (1) the author of (a) the date "June 3, 1966" or of (b) the words "last will & testament," or (2) when the date and the words were written. The testimony with respect to the aforesaid date and the aforesaid words was both conflicting and disturbingly confusing. The Judge who saw and heard the witnesses nevertheless concluded—based upon some testimony—that since the signature to the above-mentioned sheet of paper was admittedly that of decedent and was made in the presence of the subscribing witness and of two other people who were present on that date, i.e., June 3, 1966, but did not subscribe their names to the paper, this sheet of paper was a valid will. He made this conclusion even though the testimony was conflicting as to who wrote the date "June 3, 1966" and the words "last will & testament," and even though the subscribing witness gave confusing and conflicting evidence which was not taken under oath, and neither of the other two witnesses who were present at the signing subscribed their names to the sheet.

The Judge also refused to probate the reverse side of the sheet on the ground that it was simply a memorandum which had been used by the decedent in the preparation of her March writing. We agree that this was simply a memorandum and was not intended by the decedent to be a will.

The Court further held that the June 3, 1966, sheet, *which contained no clause of revocation, impliedly* revoked the March 10 instrument which on its face appeared to be a valid will. The June 3, 1966, sheet-will, although it contained no revoking clause, did contain a *remainder* clause. It is not clear whether it was intended to be a bequest of all of testatrix's estate, or

a revocation of the alleged will of March 10, 1966, or additional bequests thereto.

"The subject of revocation and revival of wills has bothered and perplexed courts throughout America for over a century." *Gray Will*, 365 Pa. 411, 413, 76 A. 2d 169. A prior will can be invalidated or revoked by a later will or other writing *which expressly revokes it. It can also be revoked by a subsequent will, without any express words of revocation, (1) by necessary implication, or (2) by a complete disposition of testator's entire estate, or (3) by disposition of testator's estate (a) in a manner entirely different from the earlier will and (b) inconsistent therewith.* *Crooks Estate*, 388 Pa. 125, 130 A. 2d 185; *Gray Will*, 365 Pa., supra (page 416); *McClure's Estate*, 309 Pa. 370, 165 Atl. 24; *Teacle's Estate*, 153 Pa. 219, 25 Atl. 1135; *Hartman's Estate (No. 1)*, 320 Pa. 321, 182 Atl. 234; I Jarman on Wills, page 333. In the light of our remand Order, we do not now decide whether the aforesaid sheet of paper dated June 3, 1966, revoked the will dated March 10, 1966, assuming that the March 10 instrument was a valid will.

We deem it unnecessary to detail the confusing testimony and the depositions and conflicts of the various witnesses, especially the testimony of the proponent of the will, Michael Sullivan, and the unsworn deposition of the subscribing witness, Camille Tierney, and the weak recollections of Stella Siedlarz, testatrix's housekeeper and companion and beneficiary. It will suffice to say that Michael Sullivan, a former business associate of the testatrix and proponent of the sheet-will and its chief beneficiary, was called as a witness by appellant. He gave testimony which conflicted in some parts with the unsworn deposition of the subscribing witness, Camille Tierney, and with the weak recollections of the other witness, Stella Siedlarz, who was present when the sheet was signed but did not

subscribe her name thereto, and also with that of appellant and her brother.

We reverse and remand for a new hearing and further consideration of all the testimony, including the attendant circumstances, for the following reasons: (1) It was error under the circumstances for the Court below to refuse the contestants of the probated will the right to call Sullivan as an adverse witness and as for cross-examination; (2) it was error under the circumstances for the Court below to refuse the contestants the right to examine Sullivan at the hearing before the Court on matters covered in the pretrial depositions; (3) it was error under the circumstances to have admitted in evidence the unsworn answers to interrogatories of Tierney, a subscribing witness to the will.

Costs to abide the result.

Mr. Justice JONES and Mr. Justice ROBERTS, although entertaining grave doubts as to whether the writing is a testamentary disposition, nevertheless concur in the result.