J-S11019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SUZANNE L. BARRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| W. LYNN BARRY | : | |
| | : | |
| Appellant | : | No. 1218 WDA 2021 |

Appeal from the Order Entered September 14, 2021
In the Court of Common Pleas of Blair County Civil Division at No(s):
2018 GN 434


BEFORE:  PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.:                    **FILED: JUNE 6, 2022**

Appellant, W. Lynn Barry (Husband), appeals from the order of equitable distribution of marital property entered on September 14, 2021.  We affirm.

We briefly summarize the facts and procedural history of this case as follows.  Husband and Lynn Barry (Wife) married on April 25, 1981[1] and separated on August 20, 2017.  Wife eventually moved out of the marital residence and currently resides with her siblings in a home owned by her older brother.  Husband remained in the marital residence where he currently lives with the parties' adult daughter and her three children.

On February 23, 2018, Wife filed a complaint for divorce.  On August 16, 2019, the parties attended a hearing before a master.  On September 26,

_____

[1]  At the time of this appeal, Wife is 63 years old and Husband is 65 years old.  The marriage produced three children who are now adults.  Wife is a receptionist at the Catholic Diocese of Altoona-Johnstown.  Husband is a self-employed carpenter.

2019, the master issued a report and recommendation regarding the equitable distribution of the marital estate. The master found "that a 50/50 division of the marital assets would be appropriate." Master's Report, 9/26/2019, at 3. The bulk of the parties' marital estate consists of three adjoining parcels of property: the marital residence, a rental home, and a vacant lot. The master "recommended essentially that each party retain the [checking, savings, and retirement] accounts and debts in his or her name, that the real estate be awarded to Husband, and that Husband pay the sum of $53,458.33 to Wife within ninety (90) days." Husband's Brief at 9.

Both parties filed exceptions to the master's report and recommendation and the trial court convened a hearing on March 6, 2020. On September 16, 2020, the court issued an order and opinion that denied the parties' exceptions and upheld the master's recommendation concerning the equitable distribution of the marital property. This appeal resulted.[2]

_____

[2] Husband filed a notice of appeal on October 14, 2020. On November 2, 2020, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband complied timely on November 10, 2020. At that time, Husband also filed a motion for the entry of a final decree in divorce. The trial court did not take action and, therefore, Husband filed a *praecipe* to withdraw the appeal because, with no final divorce decree, the equitable distribution decision was not appealable. ***See Wilson v. Wilson***, 828 A.2d 376, 378 (Pa. Super. 2003) (pre-divorce order distributing marital property is interlocutory and unappealable; appellate court lacks jurisdiction to review equitable distribution order until order is rendered final by entry of divorce decree). Thereafter, the trial court entered a divorce decree on September 13, 2021. Husband filed a notice of appeal on October 13, 2021. On November 8, 2021, Husband filed a Rule 1925(b) concise statement. On December 21, 2021, our Prothonotary

On appeal, Husband presents the following issues[3] for our review:

I.    Did the trial court err and/or abuse its discretion in averaging the parties' respective experts' appraised values for the marital residence and adjoining lot rather than accepting Husband's appraisal reports which were based on more accurate data?

II.    Did the trial court err/and or abuse its discretion in awarding a portion of the fair rental value of the marital residence to Wife under all the facts and circumstances of this case?

III.    Did the trial court err and/or abuse its discretion in failing to give Husband credit for the expenses he paid after the parties' separation for the rental property and vacant lot?

IV.    Did the trial court err and/or abuse its discretion by ordering a 50/50 distribution of the marital estate when a proper application of the equitable distribution factors set forth in 23 Pa.C.S.A. § 3502 to the facts of this case did not justify the same given the parties' respective financial circumstances, the parties' respective ages, and Husband's inability to pay a substantial financial settlement to Wife?

V.    Did the trial court err and/or abuse its discretion in ordering Husband to pay to Wife a financial settlement of $53,458.33 when the record reveals that he lacked the financial ability to make such a payment and that said amount was not equitable under all the facts and circumstances of this case?

VI.    Did the trial court err and/or abuse its discretion in ordering Husband to pay to Wife a substantial financial settlement within 90 days when the record reveals that he clearly lacked the ability to do so?

Husband's Brief at 4-5.

---

received a letter advising this Court that the trial court relied upon the record and its opinion and order entered on September 16, 2020 and no other opinion was forthcoming.

[3] We have reordered the issues presented for ease of discussion.

- 3 -

All of Husband's issues challenge the award of equitable distribution. We adhere to the following standards:

> A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009) (internal citations, quotations, and brackets omitted).

> Moreover, we have previously determined:
>
> The finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.
>
> In determining whether a court has abused its discretion, we do not usurp the trial court's duty as finder of fact. The trial court's findings, if supported by credible evidence, are binding upon a reviewing court and will be followed. An abuse of discretion must be established by clear and convincing evidence.

*Miller v. Miller*, 744 A.2d 778, 787 (Pa. Super. 1999).

Husband asserts in his opening claim that both parties presented expert appraisals of the marital properties[4] and the master erred by averaging those appraisals. *Id.* at 26-30. As such, Husband contends that "a careful review of the appraisers' testimony and reports makes abundantly clear that the values reached by Husband's appraiser [] were based on far more accurate data and should therefore have been accepted by the [m]aster as more reliable than the values reached by Wife's appraiser[.]" *Id.* at 27.

Regarding property valuation in equitable distribution cases, this Court has stated:

> The Divorce Code does not include a specific method of valuing assets. We have previously held that the court must exercise its discretion, relying upon the estimates and inventories submitted by both parties, the records of purchase prices, and appraisals. In determining the value of marital property, the court is free to accept all of the testimony, portions of the testimony, or none of the testimony regarding the true and correct value of the property. […T]he trial court act[s] within its discretion in assigning equal weights to the testimony of [] two experts, and averaging the two figures to arrive at an estimated fair market value of the marital home.

*Aletto v. Aletto*, 537 A.2d 1383, 1389 (Pa. Super. 1988) (internal citations and quotations omitted).

_____

4   Husband explains:

> [T]he primary issue in this case is the appropriate division and/or distribution of the parties' three adjoining parcels of real estate. These include the former marital residence, a vacant lot beside the residence, and a rental property, all located on East Wopsononock Avenue in Altoona, [Pennsylvania].

Husband's Brief at 20. The properties appear to be unencumbered.

- 5 -

Here, the master averaged the property appraisals presented by Husband and Wife because of "a significant disparity between the appraisals provided by each parties' expert appraiser." Trial Court Opinion, 9/16/2020, at 7. The trial court determined that the record supported the master's decision to average the appraisals because one expert "based his appraisals on comparable structures in inferior neighborhoods while [the other expert's] appraisals were based on comparable structures in quieter, nicer neighborhoods." *Id.* The trial court concluded that there was no abuse of discretion because the master "weighed the testimony, photographs, and financial situations of the parties [and] found it appropriate to average the two appraisals together to arrive at the net value for the marital" estate. *Id.* at 11. Based upon our standard of review, our review of the certified record and applicable law as set forth above, we agree and conclude that it was not an abuse of discretion to average the appraisals submitted by the parties in valuing the real properties included within the marital estate. As such, Husband is not entitled to relief on this issue.

Husband's next two issues pertain to the master's award of fair rental value of the parties' marital estate and Husband's claim of offsetting credits for maintaining the properties, so we will examine them together. Husband argues that it was an abuse of discretion "in awarding Wife the sum of $3,500.51 as her share of the fair value of the marital residence" because she left of her own volition and Husband did not "take any action to bar Wife from the home or interfere with her return" and, thus, "Wife was never

dispossessed from the marital residence[.]" *Id.* at 31 (internal quotations

omitted). Additionally, Husband asserts:

> The evidence also showed that while Wife's living expenses are
> minimal, Husband bears all the expenses of the utilities,
> maintenance, repairs, taxes and insurance for the marital
> residence. It should be noted that Husband never sought
> reimbursement for these expenses incurred for the residence, but
> merely enumerated the expenses, together with the other
> relevant factors, to demonstrate that awarding a portion of the
> fair rental value was not warranted under the circumstances of
> this case.

*Id.* at 32.

> We have found:
>
> it is within the discretion of the trial court to grant rental value as
> a part of equitable distribution. The award of rental value is within
> the sound discretion of the trial court. The basis of the award of
> rental value is that the party out of possession of jointly owned
> property (generally the party that has moved out of the formal
> marital residence) is entitled to compensation for her/his interest
> in the property.
>
> Generally, parties have an equal one-half interest in the marital
> property, and thus the dispossessed party will be entitled to a
> credit for one-half of the fair rental value of the marital home.
>
> This Court has discussed the analysis for deciding whether to
> award rental credit:
>
>> First, the general rule is that the dispossessed party is
>> entitled to a credit for the fair rental value of jointly held
>> marital property against a party in possession of that
>> property, provided there are no equitable defenses to the
>> credit. Second, the rental credit is based upon, and
>> therefore limited by, the extent of the dispossessed party's
>> interest in the property.... Third, the rental value is limited
>> to the period of time during which a party is dispossessed
>> and the other party is in actual or constructive possession
>> of the property. Fourth, the party in possession is entitled
>> to a credit against the rental value for payments made to
>> maintain the property on behalf of the dispossessed spouse.

Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half. Finally, we note that whether the rental credit is due and the amount thereof is within the sound discretion of the court of common pleas.

*Lee v. Lee*, 978 A.2d 380, 385–386 (Pa. Super. 2009) (quotations omitted), *citing* *Trembach v. Trembach*, 615 A.2d 33, 36 (Pa. Super. 1992).

Initially, we reject Husband's suggestion that Wife was not dispossessed from the marital residence. As made clear in *Lee* and *Trembach*, the award of fair rental value is available to "the party out of possession of jointly owned property" and also described as "the party that has moved out of the formal marital residence." *Lee*, *supra*. Here, there is no dispute that Wife moved out of the marital residence. Moreover, upon review of her report, it is clear that the master considered (in great detail) and ultimately granted Husband credit against the rental value for payments made to maintain the marital property:

Husband provided an accounting of expenses associated with maintaining the residence. Husband replaced the water heater. The cost of the parts was $348.00 plus fourteen hours of his time. The hot water system was replaced with parts previously purchased for the rental property. Husband repaired the furnace at the marital residence with replacement parts. New parts were unavailable because the furnace is obsolete. Husband was required to convert gas lines and water lines and install the flue in order to repair the furnace. The 2017 taxes were in the amount of $254.39 for the county, $320.43 for the school district and $416.19 for the city ($82.58 per month). The 2018 taxes were in the amount of $357.49 for the county, $393.82 for the school and

$467.15 for the city ($101.54 per month). The 2019 taxes were in the amount of $357.49 for the county, $365.75 for the school and $467.15 for the city ($99.19 per month). The homeowners insurance in 2017 and 2018 was $50.53 per month and the homeowner's insurance in 2019 was $52.35 per month.

For the period from August 20, 2017 to October 20, 2019 Husband paid taxes in the total amount of $2,540.79. For the period from August 20, 2017 to October 20, 2019, Husband paid homeowners insurance in the total amount of $1331.98. The fair rental value based upon the expert opinions will be established at $687.50 per month. ($725.00 + $650.00 = $1,375.00 ÷ 2 = $687.50). Husband is entitled to credit for expenses paid on behalf of Wife in the amount of $74.48 per month. ($2,540.77 for taxes + $1331.98 for insurance = $3,872.75 ÷ 26 months = $148.95). Wife's share or half of $148.95 is $74.48. Wife's share of the fair rental value of $687.50 adjusted for Husband's expenses would be in the amount of $269.27 ($687.50 ÷ 2 = $343.75 - $74.48 = $269.27). The fair rental value which Wife can claim is $269.27 x 26 months = $7,001.02. The calculation will be adjusted to one half or $3,500.51 because the parties' daughter and grandchildren also live in the house. Finally, Husband shall be afforded credit for the water heater maintenance which was $348.00. Wife's share was $174.00 ($348.00 ÷ 2).

Master's Report, 9/26/2019, at 11-12. The master thoroughly examined Husband's expenses in maintaining the marital residence after the parties separated and offset those expenses against the fair rental value allocated to the property. We discern no abuse of discretion in awarding Wife fair rental value for the parties' marital residence.

With regard to post-separation expenses paid on the rental property and vacant lot, Husband avers, in sum:

The [m]aster and the court below granted Wife 50% of the adjusted value of the parties' rental property and vacant lot, but failed to credit Husband with the expenses he incurred in connection with the maintenance, repairs, taxes and insurance for these properties, he should have been afforded a credit for the

expenses he incurred in the maintenance and preservation of these marital assets.

Husband's Brief at 33.

We find this issue waived for failing to develop the argument, provide legal citations, or point to the place in the record where Husband provided evidence of the expenses he allegedly incurred. *See* Pa.R.A.P. 2119(d) ("When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found."); *see also Milby v. Pote*, 189 A.3d 1065 (Pa. Super. 2018) ("We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived."). Husband does not give a synopsis of the expenses for which he now claims credit nor does he point to the record where he presented the evidence. Accordingly, we find this issue waived. Regardless, on this issue, the trial court agreed with "the [m]aster's decision not to credit [Husband] for taxes and insurances paid on the rental and vacant lot properties" because "the [m]aster considered those expenses in the ultimate distribution scheme." Trial Court Opinion, 9/16/2020, at 17. Husband does not refute this finding and we otherwise discern no abuse of discretion, as discussed below, when we analyze the overall equitable distribution scheme in response to Husband's final three appellate issues.

Husband's last three issues overlap, so we will examine them together. Generally, Husband argues that the trial court abused its discretion by upholding the master's decision to divide the marital estate 50/50 and requiring Husband to make a lump sum payment to Wife within 90 days of the decision. Husband's Brief at 14-20. More specifically, Husband claims that the master and the trial court failed to consider the disparity in the parties' income and economic circumstances, that "the parties' adult daughter and her three children reside with Husband at the former marital residence, and Husband bears the majority of expenses as a result[,]" and that Husband is responsible for repairs necessary for both the marital residence and the rental property. *Id.* at 14-22. Husband maintains that "the parties in this case have little in the way of liquid assets to permit either party from buying out the marital interest of the other party in real estate." *Id.* at 34. He contends that "[t]here is no indication whatsoever in the record in this case that Husband has any means of making a significant payment to Wife within the ninety-day time limit [] and neither the [m]aster nor the lower court suggested how this could be accomplished." *Id.* at 34-35. As a result, Husband "submits that the lump sum payment to be paid Wife should be drastically reduced and that a significant time period be afforded to make payments." *Id.* at 25-26. "In the alternative, Husband posits that the property should remain in joint names for a significant period of time to afford him an opportunity to make improvements, sell one or more of the properties,

- 11 -

and/or obtain financing to make whatever payment the court finds fair and reasonable to pay Wife." *Id.* at 26.

When deciding equitable distribution, the master and the trial court must consider:

> [T]he length of the marriage; any prior marriages; age, health, skills, and employability of the parties; sources of income and needs of the parties; contributions of one party to the increased earning power of the other party; opportunity of each party for future acquisitions of assets or income; contribution or dissipation of each party to the acquisition, depreciation, or appreciation of marital property; value of each party's separate property; standard of living established during the marriage; economic circumstances of each party; and, whether the party will be serving as custodian of any dependent children.

*Mercatell v. Mercatell*, 854 A.2d 609, 611 (Pa. Super. 2004), *citing* 23 Pa.C.S.A. § 3502(a)(1-11). "The weight to be given to these statutory factors depends on the facts of each case and is within the court's discretion." *Id.* (citation omitted).

We discern no abuse of discretion in ordering a 50/50 split in equitable distribution. Here, the master and trial court carefully considered each of the aforementioned equitable distribution factors. The parties were married for 37 years. Both Husband and Wife are currently in their 60s and still employed. When examining the respective incomes of the parties, the master determined that Husband undervalued his annual income and, essentially, considered the parties' income comparable. *See* Master's Report, 9/26/2019, at 16 ("Husband's 2018 US Individual Income Tax Return reflects business income in the amount of $9,847.00. On cross-examination, Husband testified that an

individual who receives payment as cash may not report same. Husband testified that he deducts expenses including gas for the truck and office and home expenditures. As a result, his income is higher than the amount set forth as business income on the tax returns."). Our review of the record confirms this as Husband testified that his annual income was, in fact, higher than he reported on his taxes. N.T., 8/16/2019, at 159. There is no dispute that both parties have little debt or individual assets and that each party has a modest retirement account. Both parties agreed to assume their own debt, individual assets, and retirement accounts. As a result, and as Husband acknowledges, the bulk of the martial estate consists of the three aforementioned parcels of property. Husband expressed interest in maintaining possession of all three properties. N.T., 8/16/2019, at 139-141; 156. As a result, Wife is entitled to her 50% share of the value of those properties. Hence, we discern no abuse of discretion in ordering Husband to make a lump sum payment to Wife. Moreover, Husband is not entitled to an offset because his adult daughter and her children currently reside with him in the marital residence. The master and the trial court were statutorily required to consider only whether Husband was serving as custodian of any **dependent** children, which he is not. Finally, with regard to the 90-day requirement, the trial court determined that after reviewing "the [m]aster's recommendations regarding the distribution of marital property as well as the parties' arguments, it is [the trial c]ourt's [o]pinion that there have been a number of delays which ha[ve] provided [Husband] substantial additional time

to make financial arrangements[,]" finding the master's recommendations "fair and equitable." Trial Court Opinion, 9/16/2020, at 19. We agree. Ninety days was enough time to obtain financing or sell one or more of the properties. Accordingly, we discern no abuse of discretion in ordering Husband to make a lump sum payment to Wife within 90 days. As such, Husband's final three interrelated appellate issues fail.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2022